STATE EX REL. HASKELL, ATTORNEY GENERAL, *v.*
GREAT NORTHERN RAILWAY COMPANY.

[Submitted April 28, 1894.   Decided April 30, 1894.]

MANDAMUS—*Jurisdiction to compel railroad to operate its lines.*—This court has
no jurisdiction to issue a writ of *mandamus* to compel an interstate railroad,
the employees of which have gone out on a general strike, to operate its line
within this state upon a petition alleging that sufficient competent men are
available and willing to serve said road for reasonable compensation.

ORIGINAL PROCEEDING.   Application for writ of man-
date.   Denied.

*Henri J. Haskell, T. J. Walsh,* and *R. R. Purcell,* for
Relator.

Per CURIAM.—Upon this petition the attorney general asks
this court to issue a writ of *mandamus* addressed to and com-
manding the Great Northern Railway Company to operate its
lines of railway in this state, as it had been accustomed to do
prior to the thirteenth day of April, 1894, when such opera-
tions ceased altogether, as described in the petition, to the end
that the public shall not be inconvenienced and damaged by
deprivation of the use of this *quasi* public agency of commerce,
travel, and communication.

In making this application counsel on behalf of the petition
admit—a fact of general notoriety, too—that the cessation of
operation of said railway was occasioned by a general refusal
of the employees of said company engaged in operating the
same up to that date to serve the company for the wages pro-
posed to be paid, and because of the disagreement on that sub-
ject the employees on said lines went out on what is known as
a general "strike," awaiting an adjustment of that contro-
versy.

The petition alleges that sufficient competent, skillful, and
experienced men are available, ready, and willing to serve said
company in the operation of said road for reasonable compen-
sation; and this is admitted to be the main predicate upon
which a decision in this proceeding would turn if the court
entertains the proceeding.   It is therefore proposed that this
court shall inquire and determine what would be a schedule of

reasonable wages for a corps of skilled and unskilled employees necessary to operate said railway, and then ascertain whether the requisite number of employees can be procured at the wages determined, and, if that fact is found to be true, as alleged, then command the operation of said railway under the penalties attached to disobedience of the writ of *mandamus.*

Those questions mentioned must be determined by the court upon proper inquiry whether the respondent should answer and traverse the allegations of the petition or no, because the court, before sending forth this extraordinary writ, will, by careful inquiry, become satisfied of its own jurisdiction, and that the conditions are such that the act commanded is feasible of performance.

If the proposed scheme is feasible, and the court has jurisdiction to carry it out, it evidently affords a remedy going far towards the solution of a problem of great moment to all parties concerned. But, aside from the relations of this property to interstate jurisdiction, as shown by the averments of the petition, already asserted by the United States courts to some extent, the difficulty is that this court does not at present possess jurisdiction for the arbitrament of the question involved, as aforesaid, and, having ascertained what is just in the premises, to enforce the same upon contending parties.

The time may come when the state, that is, the national government, by reason of its interstate jurisdiction, may, by proper provisions of law, come into the attitude of permanent trustee of such property so vitally related to the welfare of the whole people, instead of the occasional exercise of trusteeship by receivers, when the property has become financially swamped; and then the proper courts will be empowered to interpose an equitable authority in a threefold direction for the orderly correction of abuses existing towards employees and investors (minority as well as majority stockholders) of the vast capital involved in such property, and also towards the public as patrons thereof. For the reasons suggested, we must deny this application: The cases called to our attention lead to this conclusion also.

All concur.